Joseph E. Richards (SBN 279922)
jr@jr.law
**Law Office of Joseph Richards, P.C.**
P.O. Box 2314
Orange, CA 92859
Tel: (888) 883-6588
Fax: (833) 562-2667

Craig C. Marchiando (SBN 283829)
craig@clalegal.com
**CONSUMER LITIGATION ASSOCIATES, P.C.**
One Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (757) 930-3660
Fax: (757) 257-3450

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**Southern Division**

**BRANDON ASKA**, *on behalf of himself and all others similarly situated*,

Plaintiff,

vs.

**CVS HEALTH CORPORATION, CAREMARK, LLC, CARELONRX, INC., and COLLECTION MANAGEMENT COMPANY,**

Defendants.

Case No.: 8:26-cv-2956

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Brandon Aska ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, and alleges the following class action against Defendants CVS Health Corporation (operating as "CVS Specialty"), Caremark, LLC (d/b/a "CarelonRx Specialty Pharmacy"), CarelonRx, Inc. (together with Caremark, LLC, "CarelonRx"), and Collection Management Company (d/b/a "Credit Management Company") (collectively,

"Defendants").

**PRELIMINARY STATEMENT**

1. This is a class action for actual damages, statutory damages, statutory penalties, and attorneys' fees and costs under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*, which protect consumers from abusive debt collection practices.

2. This case involves injuries Plaintiff sustained at work and Defendants' improper attempts to recover money from Plaintiff for work-related medical treatment after his employer accepted workers' compensation liability for those injuries.

3. The workers' compensation system in California is designed to relieve the injured worker from the financial responsibility of medical treatment for work-related injuries. An employer must provide the medical treatment, including medicines, that is reasonably required to cure or relieve the injured worker from the effects of the injury. CAL. LAB. CODE § 4600(a).

4. When a worker is injured on the job, the employer's workers' compensation coverage is responsible for the cost of that treatment. This ensures that the financial burden is not shifted onto the injured worker.

5. California Labor Code § 3751(b) provides that, once an employee has filed a workers' compensation claim form, a provider of medical services may not, with actual knowledge that a claim is pending, collect money directly from the employee for services to cure or relieve the effects of the injury, unless the provider has received written notice that the employer rejected liability and has given the employee a copy of that notice. Medical providers treating workers for work-related injuries under California's workers' compensation system are generally prohibited

from requesting payment directly from the worker. *See Barri v. Workers' Comp. Appeals Bd.*, 28 Cal. App. 5th 428, 439 (2018) (quoting *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1078 (9th Cir. 2015)).

6. Plaintiff asserts class claims against Defendants under the FDCPA and the RFDCPA for their unlawful attempts to collect debts from Plaintiff and the putative class members.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the related state-law claim under 28 U.S.C. § 1367, because that claim arises out of the same case or controversy.

8. This Court has personal jurisdiction over Defendants because each Defendant transacts business in California and directed the collection conduct described in this Complaint at Plaintiff in California.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Plaintiff's receipt of the billing statements and collection letters described below.

## PARTIES

10. Plaintiff Brandon Aska is a natural person residing in Orange County, California.

11. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "debtor" as defined by Cal. Civ. Code § 1788.2(h).

12. The medical charges that Defendants attempted to collect from Plaintiff are all a "debt" as defined by 15 U.S.C. § 1692a(5), and a "debt" and "consumer debt" as defined by Cal. Civ. Code § 1788.2(d) and (f), because they are alleged

obligations of a natural person to pay money for services obtained primarily for personal, family, or household purposes.

13. Defendant CVS Health Corporation, a Delaware Corporation, is a provider of medical treatment services doing business in California that rendered medical treatment services to Plaintiff under the name “CVS Specialty.” CVS Health Corporation will be referred to as “CVS Specialty” throughout this Complaint. CVS Health Corporation may be served at its headquarters: CVS Health Corporation, Attn: Any Officer, One CVS Drive, Woonsocket, Rhode Island 02895.

14. Defendant Caremark, LLC (d/b/a “CarelonRx Specialty Pharmacy”) is a provider of medical treatment services doing business in California that rendered medical treatment services to Plaintiff. Caremark, LLC is a California limited liability company which may be served at: Caremark LLC, 1505 Corporation C T Corporation System, Reg. Agent, Emanuel Jacobo, 330 N. Brand Blvd., Glendale, CA 91203.

15. Defendant CarelonRx, Inc. is an Indiana corporation registered to do business in California that, upon information and belief, rendered and billed for medical treatment services to Plaintiff under the name “CarelonRx Specialty Pharmacy.” The October 9, 2025 statement described below states that the services were “provided by CarelonRx, Inc.” CarelonRx, Inc. may be served through its registered agent, C T Corporation System, 330 N. Brand Blvd., Glendale, CA 91203. Caremark, LLC and CarelonRx, Inc. are referred to collectively in this Complaint as “CarelonRx.”

16. Defendant Collection Management Company d/b/a Credit Management Company (“CMC”) is a third-party debt collector that attempted to collect from Plaintiff, on behalf of CVS Specialty and CarelonRx, the medical charges described below. Collection Management Company is a Pennsylvania corporation which may be served at its headquarters: Credit Management Company, Attn: Any Officer,

Foster Plaza Building 7, 661 Andersen Dr, Suite 110, Pittsburgh, PA 15220.

17. Each Defendant is a "debt collector" as defined by Cal. Civ. Code § 1788.2(c). In the ordinary course of business, each Defendant regularly, on its own behalf or on behalf of others, engages in debt collection.

18. CMC is also a "debt collector" as defined by 15 U.S.C. § 1692a(6), because it uses the mails and other instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts, and it regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, another.

19. Defendants acted through their agents, employees, and representatives, and used instrumentalities of interstate commerce, including the mails, to attempt to collect the medical debts at issue.

## FACTUAL ALLEGATIONS

20. During the period from on or about February 1, 2015 to April 5, 2016, Plaintiff sustained a cumulative-trauma injury to his kidneys, in the form of renal failure, while working in the State of California. His injury required ongoing medical treatment or services.

21. At the time of his injury, Plaintiff was employed as a fueler by Signature Flight Support Corp., dba BBA Aviation USA, Inc., and he identified himself to medical personnel as such.

22. Plaintiff filed a workers' compensation claim form on November 6, 2017, and an Application for Adjudication of Claim with the Workers' Compensation Appeals Board ("WCAB") on November 8, 2017 (WCAB Case No. ADJ11089389). On August 31, 2020, after trial, the WCAB found that Plaintiff sustained injury arising out of and in the course of his employment to his kidneys in

the form of renal failure. On November 19, 2020, the WCAB denied the employer's petition for reconsideration. On January 5, 2021, Plaintiff's employer, through its workers' compensation administrator Gallagher Bassett, accepted the claim, and by notice dated August 12, 2025, Gallagher Bassett again confirmed its acceptance of liability for Plaintiff's kidney injury.

23. Because Plaintiff's employer accepted liability for the injury he suffered at work, any and all amounts due for the medical treatment and services rendered in relation to his workplace injury are not Plaintiff's legal responsibility. The medications billed to Plaintiff described below, including tacrolimus, mycophenolic acid, and prednisone, were prescribed to treat Plaintiff's accepted industrial kidney injury.

**CVS Specialty and CMC**

24. CVS Specialty rendered medical treatment services to Plaintiff on August 7, 2025 and August 15, 2025 related to his work injury.

25. CVS Specialty knew or should have known that Plaintiff's injuries were the result of a workplace accident as it rendered medical treatment services to Plaintiff.

26. Nevertheless, on September 24, 2025, after Gallagher Bassett had accepted liability for Plaintiff's work injuries, CVS Specialty sent Plaintiff a bill or statement in the amount of $39.40 for those services.

27. CVS Specialty then placed Plaintiff's account with CMC, a third-party debt collector.

28. On January 22, 2026, CMC sent Plaintiff a letter attempting to collect $17.20 of the CVS Specialty charges on behalf of CVS Specialty, which the letter identified as "CVS/CAREMARK-SPARCS". The letter sought to collect an amount that was not permitted by law, because Plaintiff was not responsible for medical bills related to his workplace injury.

29. Despite having no basis for doing so, CVS continues to bill Plaintiff for medications to treat his ongoing workplace injury.

**CarelonRx and CMC**

30. CarelonRx also rendered medical treatment services to Plaintiff on September 3, 2025, related to his work injury.

31. CarelonRx knew or should have known that Plaintiff's injuries were the result of a workplace accident as it rendered medical treatment services to Plaintiff.

32. Nevertheless, on October 9, 2025, after Gallagher Bassett had accepted liability for Plaintiff's work injuries, CarelonRx sent Plaintiff a bill or statement in the amount of $101.44 for medical treatment services related to his work injury.

33. CarelonRx then placed Plaintiff's account with CMC.

34. On February 13, 2026, CMC sent Plaintiff two collection letters seeking to collect $60.00 and $40.20, respectively, of the CarelonRx charges on behalf of CarelonRx. Each letter sought to collect an amount that was not permitted by law, because Plaintiff was not responsible for medical bills related to his workplace injury.

**Defendants' Knowledge**

35. By identifying himself as an employee injured on the job, Plaintiff put Defendants on at least inquiry notice that he was not liable for any bills incurred in treating his work injuries.

36. Despite having knowledge that Plaintiff's injuries were the result of a workplace accident, Defendants attempted to collect from Plaintiff directly and sent Plaintiff bills, statements, and collection letters for medical services for which he was not legally responsible.

37. Defendants had in their possession all information necessary to properly handle the correct billing for the treatment. Despite this, Defendants sent

Plaintiff bills, statements, and collection letters in an attempt to collect a debt for which Plaintiff is not legally responsible.

38. Plaintiff continues to receive such bills.

39. Plaintiff believed that all medical services he received related to his workplace injury were not his responsibility and would be paid for by his employer, which is what the law requires.

**Plaintiff Suffered Actual Harm**

40. As a result of Defendants' conduct, Plaintiff suffered emotional and mental pain and anguish, including stress, anxiety, fear, and confusion, and worry that he might somehow be responsible for medical charges arising from his workplace injury.

**Defendants' Violations Were Willful**

41. Each of Defendants' bills, statements, and collection letters described above was sent years after the WCAB found Plaintiff's kidney injury industrial on August 31, 2020, and after Gallagher Bassett accepted the claim on January 5, 2021.

42. Defendants' collection activity in the face of facts showing that Plaintiff did not owe the alleged debts was not the product of mistake, accident, or bona fide error. Defendants did not maintain procedures reasonably adapted to avoid the violations alleged in this Complaint.

43. Defendants' acts were done willfully, knowingly, and intentionally, with the purpose of coercing Plaintiff into paying debts he did not owe.

44. Upon information and belief, CVS Specialty has a pattern and practice of billing California patients, and attempting to collect from them, for medical treatment of workplace injuries covered by California's workers' compensation system.

45. Upon information and belief, CarelonRx has a pattern and practice of billing California patients, and attempting to collect from them, for medical

treatment of workplace injuries covered by California's workers' compensation system.

46. Upon information and belief, CMC has a pattern and practice of attempting to collect from California consumers medical debts arising from workplace injuries covered by California's workers' compensation system.

47. Defendants' conduct toward Plaintiff was not an isolated error. It reflects each Defendant's pattern and practice of failing to comply with its obligations under the FDCPA and the RFDCPA.

## CLASS ACTION ALLEGATIONS

48. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for himself and on behalf of the following classes:

> **CVS Specialty Class:** All consumers residing in California to whom CVS Specialty sent bills or statements for medical treatment and for whom the treatment related to injuries covered by California's workers' compensation system.
>
> **CarelonRx Class:** All consumers residing in California to whom CarelonRx sent bills or statements for medical treatment and for whom the treatment related to injuries covered by California's workers' compensation system.
>
> **CMC Class:** All consumers residing in California to whom CMC sent collection letters seeking payment for medical treatment and for whom the treatment related to injuries covered by California's workers' compensation system.
>
> Excluded from each class are all persons who have signed a written release of their claims, counsel in this case, and employees of the federal judiciary.

49. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the putative classes are so numerous that joinder of all class members is impracticable. Plaintiff is informed and believes that, during the relevant time period, thousands of California consumers satisfy the definitions of the putative classes. The names and addresses of the class members are identifiable through Defendants' records, and putative class members may be notified of this action by mailed notice.

50. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all members of the putative classes and predominate over questions affecting only individual members. Defendants' conduct stems from common and uniform policies and practices, resulting in common violations of the FDCPA and the RFDCPA. Common questions include whether Defendants billed or attempted to collect for medical treatment covered by California's workers' compensation system; whether that conduct violated the statutes at issue; whether Defendants' violations were willful and knowing; the proper measure of statutory damages; and the appropriate form of relief.

51. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative classes, and all claims are based on the same facts and legal theories.

52. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the putative classes. His interests coincide with, and are not antagonistic to, the interests of the class members, and he has retained counsel experienced in consumer protection and class action litigation.

53. **Superiority. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Members of the putative classes do not have an interest in pursuing separate actions against Defendants, as the amount of each class member's individual claim is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for duplicative litigation that might result in inconsistent judgments, and management of this action as a class action will not present any foreseeable difficulties.

## CAUSES OF ACTION

## COUNT I

**Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.***

*Against CMC, on behalf of Plaintiff and the CMC Class*

54. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

55. CMC violated 15 U.S.C. § 1692d when it engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff and the CMC Class members in connection with the collection of medical debts they did not owe.

56. CMC violated 15 U.S.C. § 1692e when it used false, deceptive, or misleading representations or means in connection with the collection of the medical debts, by asserting that Plaintiff and the CMC Class members owed the medical charges.

57. CMC violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the character, amount, and legal status of the debts by representing that Plaintiff and the CMC Class members owed debts that they did not owe.

58. CMC violated 15 U.S.C. § 1692f when it used unfair or unconscionable means to collect or attempt to collect the medical debts.

59. CMC violated 15 U.S.C. § 1692f(1) when it attempted to collect amounts not permitted by law.

60. Discovery will further show that CMC's conduct is part of a broader practice of frequent and persistent noncompliance with the FDCPA.

61. As a result of CMC's violations, Plaintiff and the CMC Class members suffered actual damages, including time spent attempting to understand and stop the collection efforts; stress, financial worry, and concern over the ongoing collection efforts; and mental anguish, aggravation, and other impairments to the enjoyment of life arising from the fear of being held responsible for medical treatment of a work-related injury.

62. Plaintiff and the CMC Class members are entitled to recover from CMC actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and (B); and costs and reasonable attorneys' fees under 15 U.S.C. § 1692k(a)(3).

**COUNT II**

**Violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.***

*Against All Defendants, on behalf of Plaintiff and all three Classes*

63. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

64. The RFDCPA prohibits debt collectors, including creditors collecting their own debts, from engaging in abusive, deceptive, and unfair debt collection practices.

65. Under Cal. Civ. Code § 1788.17, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

66. Defendants violated Cal. Civ. Code § 1788.17, by incorporation of 15 U.S.C. § 1692d, when they willfully and knowingly attempted to collect debts from Plaintiff and the class members that Defendants knew they did not owe, the natural consequence of which was to harass, oppress, or abuse Plaintiff and the class members in connection with the collection of those debts.

67. Defendants violated Cal. Civ. Code § 1788.17, by incorporation of 15 U.S.C. § 1692e, when they willfully and knowingly used false, deceptive, or misleading representations or means in connection with the collection of the medical debts, by asserting that Plaintiff and the class members owed the medical charges.

68. Defendants violated Cal. Civ. Code § 1788.17, by incorporation of 15

U.S.C. § 1692e(2)(A), when they willfully and knowingly misrepresented the character, amount, and legal status of the debts by representing that Plaintiff and the class members owed debts that they did not owe.

69. Defendants violated Cal. Civ. Code § 1788.17, by incorporation of 15 U.S.C. § 1692f, when they willfully and knowingly used unfair or unconscionable means to collect or attempt to collect medical debts that they had actual knowledge Plaintiff and the class members did not owe.

70. Defendants violated Cal. Civ. Code § 1788.17, by incorporation of 15 U.S.C. § 1692f(1), when they willfully and knowingly attempted to collect amounts not permitted by law.

71. Discovery will further show that each Defendant's conduct is part of a broader practice of frequent and persistent noncompliance with the RFDCPA.

72. As a result of Defendants' violations, Plaintiff and the class members suffered actual damages, including time spent attempting to understand and stop the collection efforts; stress, financial worry, and concern over the ongoing collection efforts; emotional distress and mental anguish upon receiving bills and collection letters from multiple medical providers and a collection agency for work-related medical treatment; and aggravation and other impairments to the enjoyment of life.

73. Plaintiff and the class members are entitled to recover from each Defendant actual damages under Cal. Civ. Code § 1788.30(a) and 15 U.S.C. § 1692k(a)(1), as incorporated by Cal. Civ. Code § 1788.17; statutory damages under 15 U.S.C. § 1692k(a)(2), as incorporated by Cal. Civ. Code § 1788.17; a statutory penalty for Defendants' willful and knowing violations under Cal. Civ. Code § 1788.30(b); and costs and reasonable attorneys' fees under Cal. Civ. Code § 1788.30(c) and 15 U.S.C. § 1692k(a)(3).

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a

trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the classes, prays for judgment against Defendants as follows:

A. An order certifying the proposed classes under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing his counsel as class counsel;

B. A declaratory judgment that Defendants violated the FDCPA and the RFDCPA;

C. Actual damages under 15 U.S.C. § 1692k(a)(1) and Cal. Civ. Code § 1788.30(a);

D. Statutory damages under 15 U.S.C. § 1692k(a)(2), including as incorporated by Cal. Civ. Code § 1788.17;

E. Statutory penalties under Cal. Civ. Code § 1788.30(b);

F. Costs and reasonable attorneys' fees under 15 U.S.C. § 1692k(a)(3) and Cal. Civ. Code § 1788.30(c);

G. Pre- and post-judgment interest as permitted by law; and

H. Such other relief as the Court deems just and proper.

DATED this 8th day of October, 2026.

Respectfully Submitted,

BRANDON ASKA, *on behalf of himself and all others similarly situated*,

By: /s/ Craig C. Marchiando

Craig C. Marchiando (SBN 283829)
CONSUMER LITIGATION ASSOCIATES, P.C.
One Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

Joseph E. Richards (SBN 279922)
Law Office of Joseph Richards, P.C.
P.O. Box 2314
Orange, CA 92859
Tel: (888) 883-6588
Fax: (833) 562-2667
jr@jr.law

*Attorneys for Plaintiff*